UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KAREN ANDREA GONZALEZ JIMENEZ,

Petitioner,

v.

ANDRE QUINONES, et al.,[1]

Respondents.

Case No. 2:26-cv-03637-TMC

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

## I. INTRODUCTION AND BACKGROUND

Petitioner Karen Andrea Gonzalez Jimenez is a Chilean citizen who was admitted to the United States in December 2023 through the Visa Waiver Program ("VWP"). Dkt. 2 at 7, 9; Dkt. 8 ¶ 3; *see* 8 U.S.C. § 1187. Her VWP admission expired on March 12, 2024, but she did not leave the United States at that time. Dkt. 2 at 11. Instead, on March 31, 2024, she applied for asylum. Dkt. 2 at 11, 14; Dkt. 8 ¶ 4. That application remains pending. Dkt. 2 at 11; Dkt. 8 ¶ 4.

[1] Andre Quinones, Seattle Field Office Director, Enforcement and Removal Operations, United States Immigration and Customs Enforcement, is substituted for Julio Hernandez under Federal Rule of Civil Procedure 25(d). The Clerk is directed to amend the caption to reflect this change.

Petitioner then settled in Puyallup, Washington, where she worked at a Christian school. Dkt. 1 at 7; Dkt. 2 at 61. She has no criminal history in the United States or in Chile. Dkt. 2 at 11, 16–20.

On August 2, 2026, Immigration and Customs Enforcement ("ICE") officers arrested Petitioner in Federal Way, Washington. Dkt. 2 at 10–11; Dkt. 9-2. ICE served Petitioner with a Notice of Intent to Issue a Final Administrative Removal Order based on the allegation that she had remained in the United States after her VWP admission expired, and Petitioner requested asylum under the Convention Against Torture ("CAT"). Dkt. 9-3 at 3–4. She was then transferred to the Northwest ICE Processing Center, where she remains detained. Dkt. 2 at 12; Dkt. 8 ¶¶ 6, 10.

On August 21, Petitioner requested a bond hearing before an Immigration Judge ("IJ"). Dkt. 8 ¶ 7. At a hearing on September 9, the IJ denied bond, reasoning that he lacked jurisdiction to consider Petitioner's request because she had violated the terms of her VWP admission. Dkt. 2 at 41–42. He did not make any alternative findings. *Id.* Petitioner reserved appeal of that order. *Id.* at 42.

Meanwhile, ICE referred Petitioner to an IJ for adjudication of her claim for relief under the CAT. Dkt. 2 at 31–32; Dkt. 8 at 8–9. The outcome of any such hearing is not in the record before the Court. *See* Dkt. 8 at 8–9. The parties agree that Petitioner is not subject to a final removal order. *See* Dkt. 1 at 11–12; Dkt. 7 at 8.

On September 28, Petitioner filed a petition for writ of habeas corpus, arguing that her detention without a bond hearing violates the Immigration and Nationality Act ("INA") and the Due Process clause. Dkt. 1. On October 13, Federal Respondents filed a return. Dkt. 7. Six days later, Petitioner filed a traverse. Dkt. 10.

The habeas petition is now ripe for the Court's review. Because Petitioner's detention violates her due process rights, the Court GRANTS the petition.

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that she is "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c)(3).

## III. DISCUSSION

Petitioner argues that Respondents' refusal to provide her a bond hearing violates both the INA and her due process rights. Dkt. 1 at 13–17. She seeks immediate release from custody or, in the alternative, the bond hearing that she has been denied. *Id.* at 18–20. Federal Respondents contend that the statutory authority governing Petitioner's detention does not entitle her to a bond hearing. Dkt. 7 at 5–8. They do not respond to Petitioner's due process argument. *See id.* The Court addresses each of Petitioner's claims.

### A. Petitioner is detained under the discretionary detention framework of 8 U.S.C. § 1226(a).

At the crux of the parties' dispute is the statutory authority governing noncitizens who overstay their VWP admission. Petitioner argues that her detention is governed by 8 U.S.C. § 1226(a), which entitles her to consideration for release on bond. Dkt. 1 at 12–15. She points to other district court cases concluding that VWP violators are detained under this statute. *Id.* at 13–15 (citing *Brito Fuentes v. Warden of Nw. ICE Processing Ctr.*, No. 2:26-CV-02687-SAB, 2026 WL 2641344 (W.D. Wash. Sept. 8, 2026); *Bader v. Field Off. Dir.*, 833 F. Supp. 3d 1354 (S.D. Fla. 2026)). While acknowledging this and other contrary precedent, Federal Respondents urge

the Court to follow the conclusion of the Board of Immigration Appeals ("BIA"), which held that VWP violators are ineligible for bond because their detention arises from 8 U.S.C. § 1187(c)(2)(E), a provision of the VWP statute. Dkt. 7 at 6–8 (citing *In re A-W-*, 25 I. & N. Dec. 45 (BIA 2009)).

The Court is persuaded by the weight of district court authority concluding that VWP violators are subject to detention under § 1226(a). *See Brito Fuentes*, 2026 WL 2641344, at *1; *Bader*, 833 F. Supp. 3d at 1357–58; *Quispe v. Chestnut*, No. 1:25-CV-2002 CSK, 2026 WL 654577, at *2–3 (E.D. Cal. Mar. 9, 2026); *Molina v. Soto*, No. 25CV16880 (EP), 2025 WL 3281820, at *3–4 (D.N.J. Nov. 25, 2025); *Romance v. Warden York Cnty. Prison*, No. 3:20-CV-00760, 2020 WL 6054933, at *3–4 (M.D. Pa. July 28, 2020), *report and recommendation adopted*, No. 3:20-CV-760, 2020 WL 6047594 (M.D. Pa. Oct. 13, 2020); *Gjergj G. v. Edwards*, No. CV 19-5059 (SDW), 2019 WL 1254561, at *2–3 (D.N.J. Mar. 18, 2019); *Szentkiralyi v. Ahrendt*, No. CV 17-1889 (SDW), 2017 WL 3477739, at *4–5 (D.N.J. Aug. 14, 2017) (concluding that a VWP entrant was detained under § 1226(c) rather than § 1187); *Sutaj v. Rodriguez*, No. CV 16-5092 (JMV), 2017 WL 66386, at *5 (D.N.J. Jan. 5, 2017); *see also Neziri v. Johnson*, 187 F. Supp. 3d 211, 213 (D. Mass. 2016) (finding the argument that VWP violators are detained under § 1226 more persuasive than the contention that they are detained under § 1187). As these courts have explained, "the VWP does not have its own detention provision, and the detention of an alien in asylum proceedings must instead arise from one of the other statutory provisions expressly covering aliens subject to detention during their removal proceedings." *Gjergj G.*, 2019 WL 1254561, at *2. The Court sees no reason to depart from that conclusion here.

Section 1226(a) provides for the arrest and detention of a noncitizen "pending a decision on whether the alien is to be removed from the United States." Relying on this language, Federal

Respondents argue that this provision cannot apply to VWP violators because § 1187(b) requires VWP entrants to waive the right to participate in contested removal proceedings. Dkt. 7 at 6–8. In other words, VWP violators "may only challenge their removal upon an application for asylum, withholding of removal, or relief under the Convention Against Torture . . . and if such relief is denied, [they] can be removed without further process." *Quispe*, 2026 WL 654577, at *2; *see also* 8 C.F.R. § 1208.2(c)(1)(iv) (exempting VWP entrants from standard removal proceedings), (c)(3)(i) ("The scope of review in proceedings conducted pursuant to paragraph (c)(1) of this section shall be limited to a determination of whether the alien is eligible for asylum or withholding or deferral of removal, and whether asylum shall be granted in the exercise of discretion.").

According to Federal Respondents, § 1226(a) applies only to noncitizens in full removal proceedings, not the truncated "asylum-only" proceedings that VWP violators can request. Dkt. 7 at 7–8. But Federal Respondents do not persuasively explain why this distinction is relevant for the purposes of § 1226(a). As another court has acknowledged, "a plain reading of 8 C.F.R. § 1208.2(c)(3)(i) suggests that it limits only the substantive relief from removal for VWP entrants or violators," not the ability of a detainee to request bond. *Sutaj*, 2017 WL 66386, at *5. Petitioner is currently detained pending a determination from an IJ as to whether she may remain in the United States based on her asylum claim. This puts her within the ambit of § 1226(a).

Federal Respondents do not provide a persuasive argument for why Petitioner's detention would arise from § 1187(c)(2)(E). That provision creates a requirement for countries wishing to participate in the VWP:

> The government of the country accepts for repatriation any citizen, former citizen, or national of the country against whom a final executable order of removal is issued not later than three weeks after the issuance of the final order of removal. Nothing in this subparagraph creates any duty for the United States or any right for any alien with respect to removal or release. Nothing in this subparagraph gives

> rise to any cause of action or claim under this paragraph or any other law against any official of the United States or of any State to compel the release, removal, or consideration for release or removal of any alien.

While Federal Respondents maintain that this subsection makes clear "that Congress contemplated the speedy repatriation of VWP violators," they also note that "this provision, and Section 1187 in general, is silent regarding how to ensure that VWP violators may be so swiftly removed and returned to their home countries." Dkt. 7 at 6. And as courts have recognized, "[t]he text of § 1187(c)(2)(E) says nothing about DHS's authority to arrest and detain a person who has overstayed under the VWP." *Molina*, 2025 WL 3281820, at *3; *Quispe*, 2026 WL 654577, at *2–3. The Court thus concludes that Petitioner's detention is governed by § 1226(a).

**B. Petitioner's detention violates due process, and she is entitled to immediate release.**

Petitioner next argues that her detention without a bond hearing violates due process, warranting immediate release. Dkt. 1 at 16–20. Federal Respondents do not address the due process claim but argue that if Petitioner is detained under § 1226(a), she is entitled to a bond hearing rather than release. Dkt. 7 at 8.

"When determining whether a petitioner held under § 1226(a) has received appropriate due process regarding detention, courts in this District apply the three factor *Mathews* [*v. Eldridge*] test." *Brito Fuentes*, 2026 WL 2641344, at *2. "Those three factors are (1) 'the private interest that will be affected by the official action,' (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards,' and (3) the Government's interest." *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976)). Here, all three factors favor Petitioner. Petitioner, who has lived and worked in the United States for years after being lawfully admitted and allowed to remain at liberty while her asylum application proceeded, has a strong interest in living freely in the

community. The risk of an erroneous deprivation is high, as Petitioner has not received a custody hearing before a neutral decisionmaker, and there is no evidence in the record of changed circumstances justifying her detention in August 2026. *See Quispe*, 2026 WL 654577, at *4 ("Even if respondents believed they had a proper reason to detain petitioner, such decision on their part would warrant a pre-detention hearing rather than automatic detention."). And although the government has an interest in removing VWP violators "without the often extensive delays and expensive processes which are involved in" standard removal proceedings, *Handa v. Clark*, 401 F.3d 1129, 1135 (9th Cir. 2005), "the government's strong interest in protecting the Visa Waiver Program from abuse and providing for speedy removal cannot justify [Petitioner's] indefinite and prolonged detention," *Neziri*, 187 F. Supp. 3d at 215. Petitioner's ongoing detention without a hearing violates the Due Process clause.

As for the appropriate remedy, the circumstances of Petitioner's arrest are largely indistinguishable from the many due process cases decided in this District and elsewhere in the Ninth Circuit that have ordered release of an asylum seeker who entered lawfully and has lived successfully in the community for years. *See, e.g.*, *Brito Fuentes*, 2026 WL 2641344, at *2, *Troykalo v. Armant*, No. EDCV 26-04875-KK-PDx, 2026 WL 2602910 (C.D. Cal. Sept. 2, 2026) (petitioner overstayed B-2 visa, applied for asylum, submitted biometrics data, and was not placed in removal proceedings); *Huang v. Blanche*, No. 2:26-cv-02157-BAT, 2026 WL 2271901 (W.D. Wash. July 15, 2026) (petitioner overstayed tourist visa, applied for asylum, and was not detained after case was transferred to the Executive Office for Immigration Review for removal proceedings); *Carriollo v. Albarran*, No. 3:26-CV-05836-JSC, 2026 WL 1734895 (N.D. Cal. June 16, 2026) (petitioner entered on B-2 visa and applied for asylum); *Kharitonova v. Albarran*, No. 3:26-CV-01362-JSC, 2026 WL 531441 (N.D. Cal. Feb. 25, 2026) (petitioner entered on nonimmigrant visa, applied for asylum, and was not detained after case transferred to EOIR for

removal proceedings). Federal Respondents do not cite any cases reaching a different result on similar facts. The Court thus concludes that Petitioner is entitled to immediate release from custody.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS:

1. The Petition for writ of habeas corpus (Dkt. 1) is GRANTED.
2. Within 24 hours of this order, Respondents must RELEASE Petitioner Karen Andrea Gonzalez Jimenez.
3. Respondents must return to Petitioner any personal property, including any personal identification document (other than a passport) and any employment authorization document.

Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412, and the parties are encouraged to confer before filing a petition.

Dated this 10th day of November, 2026.

Tiffany M. Cartwright
United States District Judge